UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| ROBERT ANDERSON,<br>　　Plaintiff,<br>v.<br><br>CLINTON TWP. POLICE<br>DEPARTMENT, *et al.*,<br>　　Defendants.<br>_____/ | Case No.: 18-11291<br><br>Terrence G. Berg<br>United States District Judge<br><br>Stephanie Dawkins Davis<br>United States Magistrate Judge |

**REPORT AND RECOMMENDATION**
**DEFENDANTS' MOTIONS TO DISMISS (Dkts. 32, 37, 46)**

**I.　　PROCEDURAL HISTORY**

Plaintiff brought this action *pro se* under 42 U.S.C. § 1983 and 1981. (Dkt. 1). District Judge Terrence G. Berg referred all pretrial matters in this case to the undersigned on May 29, 2018. (Dkt. 12). Defendants Wolchek, Aldea, and Chase Bank have filed motions to dismiss Anderson's complaint. (Dkts. 32, 37, 46). The motions are fully briefed, and the matter is now ready for report and recommendation.

For the reasons that follow, the undersigned **RECOMMENDS** that defendants Wolcheck, Aldea, and Chase Bank's motions to dismiss (Dkts. 32, 37, 46) be **GRANTED**, and that these defendants be dismissed from plaintiff's

complaint. The undersigned further **RECOMMENDS** that Wolchek's and Aldea's request for surety bond be **DENIED**.

## II. FACTUAL BACKGROUND

Anderson's complaint is about the alleged shortcomings of the Clinton Township Police Department and a news story aired on Fox 2 by defendant Wolcheck concerning Anderson's trucking business. Plaintiff operated a trucking business in which he bought and then rented trucks. (Dkt. 1, at ¶ 12-13). Defendant Aldea operated a similar trucking business. (*Id.* at ¶ 24). Aldea informed Anderson that Anderson was in possession of a check made payable to Aldea, but Anderson was unaware of this. (¶¶ 25-27). Aldea made a report with the Clinton Township Police. (¶ 30). On February 14, 2013, a person working on Aldea's behalf approached plaintiff and threatened him with violence. Anderson called the Clinton Township Police; the police refused to write a police report on this occasion and for later threats against Anderson. (¶ 32-33, 47, 48, 50, 75, 78). On March 4, 2013, Clinton Township Police informed Anderson's ex-wife that Anderson was the focus of an investigation regarding the check, but on March 7, 2013, his ex-wife informed the police that she was at fault and was willing reimburse Aldea. (¶ 42-43). On March 12, 2013, Chase Bank processed a search warrant from the Clinton Township Police Department and froze Anderson's

accounts; the bank had not released those funds at the time of plaintiff's complaint. (¶ 44-45).

Anderson says that the Clinton Township Police later sought an arrest warrant for him, he received a "PR" (presumably personal recognizance) bond and attended all court proceedings. (¶ 51-52). During the preliminary examination, Aldea testified but was found not credible. (¶ 54). On July 24, 2013, the Clinton Township case was dropped. (¶ 55).

Andrew Johnson[1] entered into an agreement with Anderson for a truck on February 6, 2015. (¶ 57). On October 10, 2014, Willy Gilmore entered into a similar agreement. (¶ 61). Both Johnson and Gilmore did not provide required documents, so they were not able to pick up their trucks. On July 8, 2015, defendant Wolcheck ran a news story in which defendants Aldea, Johnson, and Gilmore were interviewed on camera and the Clinton Township Police were used "as unnamed sources." (¶ 65-66). According to Anderson, the defendants conspired and gave subsequent interviews stating that Anderson stole and cashed checks made payable to Aldea's company, even though charges were dropped

---

[1] Johnson was named as a defendant in Anderson's complaint. In a report and recommendation dated May 30, 2019, the undersigned recommended dismissing without prejudice defendants Johnson and Willy Gilmore for failure to properly serve the defendants. (Dkt. 53). The recommendation was adopted, and both individuals were dismissed without prejudice. (Dkt. 54).

against Anderson. (¶ 68). Anderson says Wolcheck did not check the facts before running the story. (¶ 70, 72).

Anderson pleads the following claims: Count One – "Violation and Deprivation of Constitutional Rights," Count Two – Right to Privacy, Count Three – Equal Protection, Count Five[2] - First Amendment Retaliation, Count Six – Malicious Prosecution, Count Seven – Conspiracy, Count Eight – Intentional Infliction of Emotional Distress, Count Nine – "Section 1983 Deprivation of Federal Rights," Count Ten – First Amendment Free Expression and False Light, and Count Eleven – Conversion.

## III.  ANALYSIS AND RECOMMENDATIONS

### A.  Standard of Review

To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must first comply with Rule 8(a)(2), which requires "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 545 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). A plaintiff is also obliged "to provide the grounds of his entitlement to relief," which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Association*

---

[2] There is no Count Four in the complaint.

*of Cleveland Fire Fighters v. City of Cleveland*, 502 F.3d 545, 548 (6th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555 (citations and internal quotation marks omitted)).  In *Iqbal*, the Supreme Court explained that a civil complaint only survives a motion to dismiss if it "contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.  And, while a complaint need not contain "detailed" factual allegations, its "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true." *Id.* (quoting *Twombly*, 550 U.S. at 555 (citation and internal quotation marks omitted)); *see also League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007) (emphasis in original) (the factual allegations in a complaint need not be detailed but they "must do more than create speculation or suspicion of a legally cognizable cause of action; they must show *entitlement* to relief.").

A complaint filed by a *pro se* plaintiff must be "liberally construed" and "held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citation omitted).  Thus, when applying *Twombly*, except as to a claim of fraud, the Court must still read

plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519 (1972), and accept plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992); *Erickson*, 551 U.S. at 93-94 (The Court of Appeals improperly departed "from the liberal pleading standards set forth by Rule 8(a)(2)" and failed to liberally construe" the *pro se* complaint at issue.).

B. <u>Analysis</u>

Wolcheck, Aldea, and Chase Bank argue that they should be dismissed from this case because they are not subject to § 1983 liability since they were not acting as state actors during the events recited in the complaint. Conversely, Anderson contends that he they each were state actors, or can be considered state actors, and he sufficiently pleaded that they were state actors.

"A § 1983 claim must satisfy two elements: 1) the deprivation of a right secured by the Constitution or laws of the United States and 2) the deprivation was caused by a person acting under color of state law." *Ellison v. Garbarino,* 48 F.3d 192, 194 (6th Cir.1995) (internal quotation marks and citation omitted). A plaintiff may not proceed under § 1983 against a private party "no matter how discriminatory or wrongful" the party's conduct. *Am. Mfrs. Mut. Ins. Co. v. Sullivan,* 526 U.S. 40, 50 (1999) (internal quotation marks and citations omitted). "Nevertheless, there are circumstances under which private persons may, by their

actions, become 'state actors' for § 1983 purposes." *Tahfs v. Proctor*, 316 F.3d 584, 590 (6th Cir. 2003). A private party can fairly be said to be a state actor if (1) the deprivation complained of was "caused by the exercise of some right or privilege created by the State" and (2) the offending party "acted together with or has obtained significant aid from state officials, or because his conduct is otherwise chargeable to the State." *Lugar v. Edmondson Oil Co.,* 457 U.S. 922, 937 (1982).

> This circuit recognizes three tests for determining whether private conduct is fairly attributable to the state: the public function test, the state compulsion test, and the nexus test. The public function test requires that the private entity exercise powers which are traditionally exclusively reserved to the state. . . . The typical examples are running elections or eminent domain. The state compulsion test requires proof that the state significantly encouraged or somehow coerced the private party, either overtly or covertly, to take a particular action so that the choice is really that of the state. Finally, the nexus test requires a sufficiently close relationship (i.e., through state regulation or contract) between the state and the private actor so that the action taken may be attributed to the state.

*Ellison v. Garbarino*, 48 F.3d 192, 195 (6th Cir. 1995) (internal quotation marks and internal citations omitted).

Anderson offers no basis for concluding that any of these tests applies against Wolchek, Aldea, or Chase Bank. When applying the public function test, the court generally conducts an historical analysis to determine whether the private party has engaged in actions traditionally reserved to the state. *Ellison,* 48 F.3d at

196. Anderson did not plead any facts suggesting that these defendants engaged in actions traditionally reserved to the state. "Considering that plaintiff bears the burden on this issue, this failure alone renders this test inapplicable." *Id.* Further, creating and broadcasting a news story about a citizen (Wolcheck), or providing statements for the news story and complaints to the police (Aldea), or honoring a search warrant to freeze accounts (Chase Bank)[3] are not actions traditionally reserved to the state. Indeed, as to Aldea and Chase Bank, it is clear that "[p]roviding information to the police, responding to questions about a crime … does not expose a private individual to liability for actions taken 'under color of law.'" *Moldowan v. City of Warren*, 578 F. 3d 351, 399 (2009).

As for the state compulsion test, Anderson did not allege that the state or its agent, Clinton Township Police, significantly encouraged or somehow coerced Wolchek, Aldea, or Chase Bank, either overtly or covertly, to take a particular action so that the choice to act was really that of the state. While Anderson alleges that the Clinton Township Police "assisted in false media reports," (Dkt. 1, ¶ 13), this fact, taken as true in this instance, does not mean that the police department encouraged or coerced Wolchek to publish the news story or

---

[3] In his response to Chase Bank's motion to dismiss, Anderson appears to contend that both Wolchek and Chase Bank are responsible for the new story broadcast by Fox 2. (Dkt. 47). This allegation is simply not borne out in the facts alleged in the complaint. Nowhere in the complaint does Anderson allege Chase Bank's involvement in the news story. The only allegations about Chase Bank are about the bank's honoring a search warrant and freezing Anderson's account.

8

encouraged or coerced Aldea to provide statements for the broadcast. *See, e.g., Davis v. Janczewski,* 22 F. App'x 533, 534 (6th Cir. 2001) ("[D]efendant Janczewski cannot be said to have been acting under color of state law in reporting [alleged false statements regarding plaintiff's convictions] for a local newspaper."); *Hall v. Witteman,* 2008 WL 4490620, at *4 (D. Kan. Oct.1, 2008) ("Generally, a newspaper is a private enterprise, not a state actor and cannot be held liable under § 1983 for publishing the news. This remains true even when the newspaper publishes information received from police or other state officials.") (internal citations omitted).[4] And, although Chase Bank froze Anderson's accounts because of a search warrant served by the Clinton Township Police, this does not make the bank a state actor. *See, e.g., Moore v. Branch Banking & Tr. Co.*, 2010 WL 4962909, at *3 (W.D. Ky. Dec. 1, 2010); *Walton v. U.S. Bank,* 2010 WL 3928507 (D. Utah 2010) (finding plaintiff's § 1983 claim failed to allege state action where defendant bank froze and transferred joint account holder's social security benefits according to valid garnishment order); *Murphy v. Yates,* 2005 WL 2989630 (E.D.Pa. 2005) (finding defendant bank's compliance with a valid garnishment order was not state action and, therefore, not a violation of § 1983).

---

[4] Although these cases were about a story published in a newspaper, rather than a news story aired on television, this distinction does not appear to alter the basic premise that publishing a news story, even with information from police, does not make the publisher or the writer a state actor.

Further, as stated above, giving information to the police as Aldea did does not make Aldea a state actor. *Moldowan*, 578 F. 3d at 399.

Finally, Anderson also does not satisfy the nexus test. In Count Two, "Right to Privacy and to Be Left Alone," Anderson alleges that, "Although some Defendant [sic] are private individuals and not a state officials [sic], the relationship between the Defendants and the Clinton Township Police is sufficiently close that they could be viewed as state actors." (Dkt. 1, ¶ 30). The nexus test requires more than merely a "sufficiently close" close relationship. The test is satisfied when there is a "sufficiently close relationship (i.e., through state regulation or contract) between the state and the private actor *so that the action taken may be attributed to the state*." *Ellison*, *supra*. Anderson's allegations do not establish the kind of close relationship that would make the defendants' actions attributable to the state. Anderson claims that the Clinton Township Police were used as "unnamed sources" in Wolcheck's story, and that prior to the news story, Aldea lodged a complaint about Anderson with the Clinton Township Police. Even assuming Wolchek and Aldea received information about Anderson from the Clinton Township Police, this connection does not establish such a relationship that the news story and interview may be attributed to the state. Instead, it appears that Wolcheck's and Aldea's actions were attributable to themselves, or for Wolcheck, to his employer (who is not a state entity). There is no allegation that

there was a contract between the Clinton Township Police (or other state entity) and these defendants to act as they did, and plaintiff has pointed to no state regulation guiding their actions. Even if Chase Bank is subject to state regulation (Anderson does not allege this), that fact by itself would not turn the bank into a state actor. *Jackson v. Metropolitan Edison Co.,* 419 U.S. 345, 350 (1974) ("The mere fact that a business is subject to state regulation does not by itself convert its action into that of the State for purposes of the Fourteenth Amendment."); *see also American Mlfrs. Mut. Ins. Co. v. Sullivan,* 526 U.S. 40, 52-59 (1999) (holding that an insurance company was not a state actor although it was subject to extensive state regulation).

While Anderson alleges that these defendants were state actors, his declaration standing alone is insufficient to attach § 1983 liability to their actions. "When a pleading fails to provide more than bare allegations of state action, the proper course is to dismiss the case for failure to state a claim under Fed. R. Civ. P. 12(b)(6)." *Nat'l Fair Hous. All., Inc. v. Town & Country-Sterling Heights, Inc.*, 2008 WL 4826298, at *4 (E.D. Mich. Nov. 5, 2008) (citing *Tahfs,* 316 F.3d at 596).

In light of the conclusion that Wolcheck, Aldea, and Chase Bank are not subject to liability based on lack of state action, the undersigned need not address the defendants' remaining arguments for dismissal. The undersigned will,

11

however, address Wolcheck's and Aldea's argument for imposition of a surety bond. Wolcheck and Aldea request that this Court impose a surety bond as a condition of plaintiff's continuing this action, appealing any adverse ruling in this action, or commencing any future action in any court against them, similar to the bond the Macomb County Circuit entered against Anderson. Their argument is as follows:

> Given Anderson's history in this series of related cases,[5] his current attempts to add Wolchek's employer, New World Communications of Detroit, Inc., and his public record history of filing and defending numerous in pro per collection and other actions in this and in other area state courts, and his likely non-collectability, there is every reason to believe that, unless a substantial surety bond for costs and sanctions is imposed, he will continue to display contempt for the orders of this and other courts.

(Dkt. 32, at p. 13-14; Dkt. 37, at p. 4).

Wolcheck cites Ninth Circuit law for the proposition that courts look to the forum state's law for imposing a surety bond as there appears to be no similar Sixth Circuit authority, binding or otherwise, stating the same. The undersigned declines to take the Ninth Circuit's lead here. It is clear that the Supreme Court

---

[5] Anderson filed a prior similar case in this Court that was dismissed for lack of diversity/subject matter jurisdiction. (Dkt. 18-10037). He also filed a prior similar state case in Macomb County Circuit that was dismissed against Wolcheck and Aldea as brought beyond the statute of limitations. (Dkt. 32, Exhibit A – Macomb County Circuit Court opinion). He later filed another Macomb County Circuit case, but did not serve the summons and complaint and let the summons expire. (Dkt. 32, at p. 5).

12

has recognized the authority of district courts to take action to prevent abuse of the judicial system. *Chambers v. NASCO Inc.*, 501 U.S. 32, 43-44 (1991). And, this court has recognized that "in the interest of justice and in the exercise of its inherent discretion...the ordering of security for costs" can be justified. *Thomas v. Briggs*, 2016 WL 5405349, at *3 (E.D. Mich. Sept. 28, 2016) (quoting *State Wide Enters., Inc. v. U.S. Gypsum Co.*, 238 F. Supp. 604, 606 (E.D. Mich. 1965)); *see also Anderson v. Steers, Sullivan, McNamar & Rogers*, 998 F.2d 495, 496 ("So if there is reason to believe that the prevailing party will find it difficult to collect its costs, the court can require the posting of a suitable bond."). "Under the federal standard, the Court considers three factors in deciding whether or not to impose a bond requirement and considers whether: 1) Plaintiff's claims are of dubious merit; 2) Plaintiff lacks financial responsibility; and 3) the party seeking the security would incur substantial expense."[6] *Wang v. Lightspeed Environment, Inc.*, 2014 WL 29120 (E.D. Mich. Jan. 3, 2014) (citing *Hardwoods, Inc. v. Universal Oil Prods. Co.*, 493 F. Supp. 76, 77 (W.D. Mich. 1980).

     The undersigned finds that, although Anderson's claims against Wolchek and Aldea may be of dubious merit, considering the discussion above, it is not clear on this record that Anderson is not financially responsible or that these defendants would incur substantial expense. It is true that Anderson is proceeding

---

[6] Wolchek and Aldea do not cite this standard.

*pro se*. This may indicate that he does not have excess financial resources. But this does not mean that Anderson will be unable to pay costs should they be awarded. And, the defendants do not argue that they will suffer substantial expense from litigating this case. Indeed, litigation has not progressed very far at this point. For these reasons, imposing a bond for Anderson's continuing this litigation does not appear warranted at this juncture.

Additionally, although Anderson has filed four lawsuits against them, only two have been litigated. As Anderson points out, his first federal case was dismissed before the defendants were served, and his second state court suit was never served. Thus, Wolchek and Aldea have had to respond to only two lawsuits—this lawsuit and the first state court suit. From these facts alone, it does not appear that Anderson is trying to abuse judicial process or be vexatious, even if he is not successful.

As to the request for a surety bond as a condition to filing any new lawsuit in any court regarding the same factual circumstances, Wolchek and Aldea provide no authority demonstrating that this Court can impose a bond on Anderson for a future lawsuit in any court, and the undersigned is unaware of any such authority. This request should be denied.

## IV. RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** that defendants Wolcheck, Aldea, and Chase Bank's motions to dismiss (Dkts. 32, 37, 46) be **GRANTED**, and that these defendants be dismissed from plaintiff's complaint. The undersigned further **RECOMMENDS** that Wolchek's and Aldea's request for surety bond be **DENIED**.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the

objections in length and complexity. Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date: June 30, 2019

<u>s/Stephanie Dawkins Davis</u>
Stephanie Dawkins Davis
United States Magistrate Judge