UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ROBERT ANDERSON,                          Case No.: 18-11291
     Plaintiff,
v.                                        Terrence G. Berg
                                          United States District Judge
CLINTON TWP. POLICE
DEPARTMENT,                               Michael J. Hluchaniuk
     Defendant.                           United States Magistrate Judge
_____/


**REPORT AND RECOMMENDATION:**
**DEFENDANT CLINTON TOWNSHIP POLICE DEPARTMENT'S**
**MOTION FOR SUMMARY JUDGMENT (ECF No. 50)**


## I.     PROCEDURAL HISTORY

Plaintiff Robert Anderson brought this action *pro se* under 42 U.S.C. §§

1981, 1982, and 1983.  (ECF No. 1).  After the case was reassigned, District Judge

Terrence G. Berg referred all pretrial matters in this case to the undersigned on

December 30, 2019.  (ECF No. 58).  On July 17, 2019, the District Court adopted

the undersigned's recommendation to grant the motions to dismiss of defendants

Rob Wolcheck, Oviedu Aldea, and Chase Bank.  (ECF No. 57).  Thus, defendant

Clinton Township Police Department ("Police Department") is the only remaining

defendant.  The Police Department filed a motion for summary judgment on March

13, 2019.  (ECF No. 50).  The motion is fully briefed, and the matter is now ready

for report and recommendation.

For the reasons that follow, the undersigned **RECOMMENDS** that

defendant Clinton Township Police Department's motion for summary judgment

be **GRANTED**.

## II.    FACTUAL BACKGROUND

The Police Department brings this motion for summary judgment

challenging the legal sufficiency of Anderson's case, and in large part does not

contest the facts stated in the complaint.  The case centers on the alleged

shortcomings of the Clinton Township Police Department and a news story aired

on Fox 2 Detroit by broadcaster Rob Wolcheck in a "Hall of Shame" segment

about Anderson's trucking business.  (ECF No. 21, PgID.175)  Anderson claims

that the news story was false, that he and his trucking business were harmed by it,

that the Police Department contributed false information for the news story, that

the Police Department engaged in malicious prosecution against Anderson, and

that the Police Department did not adequately respond to Andersons' reports of

threats against him.

Anderson operated a trucking business in which he bought and then rented

trucks.  (ECF No. 1, at ¶ 12-13).  Former defendant Aldea operated a similar

trucking business.  (*Id.* at ¶ 24).  Aldea informed Anderson that Anderson was in

possession of a check made payable to Aldea, but Anderson says he was unaware

that he had Aldea's check.  (¶¶ 25-27).  Aldea made a report with the Police

Department against Anderson about the check, presumably that Anderson stole the check.  (¶¶ 30, 68).  On February 14, 2013, a person working on Aldea's behalf approached plaintiff and threatened him with violence.  Anderson called the Clinton Township Police to report the threat, but the police refused to write a report on this occasion and for later threats against Anderson.  (¶ 32-33, 47, 48, 50, 75, 78).  On March 4, 2013, the Police Department informed Anderson's ex-wife that Anderson was the focus of an investigation regarding the check.  A few days later his ex-wife informed the police that she was the one at fault and was willing to reimburse Aldea.  (¶ 42-43).  Anderson says that the Police Department nevertheless later obtained an arrest warrant for him; he received a "PR" (presumably personal recognizance) bond and attended all court proceedings.  (¶ 51-52).  Aldea testified at the preliminary examination, but his testimony was found to be not credible.  (¶ 54).  On July 24, 2013, Clinton Township dropped the case.  (¶ 55).

Andrew Johnson[1] entered into an agreement with Anderson for a truck on February 6, 2015.  (¶ 57).  On October 10, 2014, Willy Gilmore entered into a similar agreement.  (¶ 61).  Neither Johnson nor Gilmore provided required

---

[1] Johnson was named as a defendant in Anderson's complaint.  In a report and recommendation dated May 30, 2019, the undersigned recommended dismissing without prejudice defendants Johnson and Willy Gilmore for failure to properly serve the defendants. (Dkt. 53).  The recommendation was adopted, and both individuals were dismissed without prejudice.  (Dkt. 54).

documents, so they were not able to pick up their trucks.  On November 11, 2014, Anderson says he took a recording of Gilmore telling him he was going to blow Anderson's head off with a gun to the Police Department, but the police failed to act.  (¶ 47).  On July 8, 2015, Wolcheck ran a news story on Fox 2 Detroit in which defendants Aldea, Johnson, and Gilmore were interviewed on camera and the Clinton Township Police were used "as unnamed sources."  (¶ 65-66).  According to Anderson, the defendants conspired and gave subsequent interviews stating that Anderson stole and cashed checks made payable to Aldea's company, even though charges were dropped against Anderson.  (¶ 68).

While Anderson alleges that the Police Department encouraged its officers to use animus in decisions and actions concerning him (ECF No. 1, PageID.21, ¶ 15), and that the Police Department maintained a policy or custom which caused the alleged injuries (ECF No. 1, PageID.36), the Police Department disagrees.  The Chief of Police during the time relevant to the complaint, Fred Posavetz, avers that the Police Department never had any policy or custom of mistreating Anderson.  (ECF No. 50-8).  Specifically, he says the Police Department did not have a policy or custom of engaging in malicious prosecution, (¶ 8, 9), acting with animus towards him (¶ 6), ignoring or failing to protect Anderson (¶ 10), or designing to defame, slander, or intimidate him (¶ 13).

Anderson's complaint is not a paragon of clarity.  Indeed, some of the claims are vague as to the exact federal law violation alleged.  For example, Count One alleges the violation of deprivation of his constitutional rights under § 1983, and he lists a number of harms he has suffered, but he does not tie any particular harm to a specific federal right or protection.  (ECF No. 1, PageID.20-22).  It is apparent, though, that Anderson asserts claims against the Police Department for actions that can be put into two groups: (1) the false news story and (2) malicious prosecution or inadequate police response to threats.

## III.   ANALYSIS AND RECOMMENDATIONS

### A.   Standard of Review

When a party files a motion for summary judgment, it must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed.R.Civ.P. 56(a).  "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record...; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."  Fed.R.Civ.P. 56(c)(1).  The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must

prevail as a matter of law." *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)).  Furthermore, the evidence and all reasonable inferences must be construed in the light most favorable to the non-moving party.  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Where the movant establishes the lack of a genuine issue of material fact, the burden of demonstrating the existence of such an issue shifts to the non-moving party to come forward with "specific facts showing that there is a genuine issue for trial."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  That is, the party opposing a motion for summary judgment must make an affirmative showing with proper evidence and must "designate specific facts in affidavits, depositions, or other factual material showing 'evidence on which the jury could reasonably find for the plaintiff.'"  *Brown v. Scott*, 329 F.Supp.2d 905, 910 (6th Cir. 2004).  In order to fulfill this burden, the non-moving party need only demonstrate the minimal standard that a jury could ostensibly find in his favor.  *Anderson*, 477 U.S. at 248; *McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000).  However, mere allegations or denials in the non-movant's pleadings will not satisfy this burden, nor will a mere scintilla of evidence supporting the non-moving party.  *Anderson*, 477 U.S. at 248, 251.

The Court's role is limited to determining whether there is a genuine dispute about a material fact, that is, if the evidence in the case "is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. Such a determination requires that the Court "view the evidence presented through the prism of the substantive evidentiary burden" applicable to the case. *Id*. at 254. Thus, if the plaintiff must ultimately prove its case at trial by a preponderance of the evidence, on a motion for summary judgment the Court must determine whether a jury could reasonably find that the plaintiff's factual contentions are true by a preponderance of the evidence. *See id.* at 252-53. Finally, if the nonmoving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the movant is entitled to summary judgment. *Celotex*, 477 U.S. at 323. The Court must construe Rule 56 with due regard not only for the rights of those "asserting claims and defenses that are adequately based in fact to have those claims and defenses tried to a jury," but also for the rights of those "opposing such claims and defenses to demonstrate in the manner provided by the Rule, prior to trial, that the claims and defenses have no factual basis." *Id*. at 327.

    B.   <u>Analysis</u>

        1.   Statute of Limitations

            a.   Count One – Violation and Deprivation of Constitutional Rights

Count One of the complaint is stated in rather general terms.  Anderson cites and quotes from 42 U.S.C. § 1983 and lists a number of rights that he believes are clearly established.  For example, he asserts that he had the clearly established right to be free and pursue happiness, to pursue free speech, to life and liberty, and to equal protection of the law.  (ECF No. 1, PageID.20-21, ¶¶ 5-6, 8, 10).  He also alleges that the Police Department has shown longstanding indifference and malice toward him, that the Department allowed and encouraged its officers to use animus as a motivating factor in "police decisions and actions toward" him, and that they assisted in false media reports.  (*Id.* at ¶ 11-15).

It seems as though Count One, brought under § 1983, is a "catch-all" count against the Police Department.[2]  Anderson references what can be characterized as malicious prosecution and failure to protect or adequately respond to threats against him, as well as a reference to the false media report, to which he alleges the Department contributed false information.

Taking the malicious prosecution/failure to adequately respond claim first, the undersigned agrees with the Police Department that the claim is time-barred,

---

[2] To the extent Anderson relies on § 1983 in Count One as an independent claim, the claim fails as a matter of law.  "[O]ne cannot go into court and claim a 'violation of § 1983'— for § 1983 by itself does not protect anyone against anything."  *Chapman v. Houston Welfare Rights Org.*, 441 U.S. 600, 617 (1979).  "Section 1983 does not create any substantive rights; rather it is the vehicle whereby plaintiffs can challenge actions by governmental officials."  *Henderson v. City of Simi Valley*, 305 F.3d 1052, 1056 (9th Cir. 2002).  Plaintiff's § 1983 suit fails if he does not allege a plausible violation of his federal constitutional or statutory rights.

though the undersigned does not adopt the Police Department's analysis. The Police Department appears to contend that this Court should identify and apply the most analogous state statute of limitations for each of Anderson's claims. For example, for the claim of malicious prosecution, the Police Department cites *Mulligan v. Schlacter,* 389 F.2d 231 (6th Cir. 1968). (ECF No. 50, PageID.584). In that case, the court applied Michigan's two-year statute of limitations for false imprisonment, malicious prosecution, or misconduct of sheriffs and their deputies. The department also cites *Nichols v. Moore*, 334 F. Supp. 2d 944 (E.D. Mich. 2004), for the proposition that Michigan's one-year limitations period applies to invasion of privacy or defamation claims. (ECF No. 50, PageID.587-59). Neither case is applicable here. *Mulligan* relied on an outdated understanding of the application of a state's statute of limitations and *Nichols* used the specific Michigan statute of limitations to analyze state law claims, not § 1983 claims.

The Police Department neither recognizes nor acknowledges that the Sixth Circuit, following Supreme Court case law, has abandoned the practice of finding the "most appropriate" state statute of limitations for § 1983 claims in favor of a more certain standard. In *Wilson v. Garcia,* 471 U.S. 261, 276-280 (1985), the Supreme Court held that the appropriate statute of limitations to be applied in all section 1983 actions is the state statute of limitations governing actions for personal injury. Subsequently, in *Carroll v. Wilkerson,* 782 F.2d 44, 45 (6th Cir.

1986), the Sixth Circuit held that Michigan's three-year statute of limitations for personal injury claims, M.C.L. § 600.5805(10), governs section 1983 actions when the cause of action arises in Michigan. *McCune v. City of Grand Rapids*, 842 F.2d 903, 905 (6th Cir. 1988); *Roberson v. Macnicol*, 698 Fed. Appx. 248, 250 (6th Cir. 2017). The same is true for claims brought under §§ 1981 and 1982 as well. *See Phifer v. City of Grand Rapids*, 657 F. Supp. 2d 867, 873 (W.D. Mich. 2009) ("[C]laims under §§ 1981, 1983, and 1985 are governed by Michigan's three-year statute of limitations for personal injury actions...."); *Patton v. Village of Cassopolis*, 2013 WL 3929989, at *2 (W.D. Mich. July 29, 2013). Thus, since Anderson's causes of action arose in Michigan, the statute of limitations is Michigan's three-year statute of limitations for personal injury claims brought under §§ 1981, 1982, and 1983.

The question of when civil rights claims accrue remains one of federal law. *Wallace v. Kato*, 549 U.S. 384, 388 (2007). Generally, a tort cause of action accrues when there has been a violation of a legally protected interest, and such a violation usually occurs when a tort is committed. *See Echols v. Chrysler Corp.,* 633 F.2d 722, 725–26 (6th Cir. 1980). In cases under § 1983, a cause of action accrues and the statute of limitations commences to run when the plaintiff knows or has reason to know of the injury which is the basis of his complaint. *Kelly v. Burks,* 415 F.3d 558, 561 (6th Cir. 2005).

Anderson makes clear, though, that the criminal case against him—which forms the basis of the malicious prosecution claim—was dismissed July 24, 2013. (ECF No. 1, ¶ 55).  A malicious prosecution claim is analyzed under the Fourth Amendment to the United States Constitution, and thus could be brought pursuant to § 1983.  This claim likely accrued on or before that date, as Anderson would have had reason to know on or before that date of the facts that give rise to his malicious prosecution claim, i.e. actions of the police in working to investigate/prosecute Anderson.  The malicious prosecution claim is time barred. Anderson filed his complaint in this case on April 25, 2018, more than three years after his criminal case was dropped.

Though Anderson stated his inadequate police response claim as a constitutional claim brought under § 1983, he did not tie the factual basis of the claim to any particular federal law.  The Court is unaware of any constitutional claim for inadequate police response.  Even if such a federal claim existed, the three-year statute of limitations for personal injury would bar the claim.  His allegations about inadequate police response to threats against Anderson or to calls from Anderson appear to arise from events that predate the dropping of the criminal case in July 2013, except that Anderson mentions that the Police Department did not respond to threats made against him in November 2014.  (ECF No. 1, ¶¶ 47, 64).  This claim would have accrued at least by the last alleged

instance of inadequate police response in November 2014, because he knew (according to his belief) that the Police Department was ignoring threats of harm against him at that time.  Anderson's April 25, 2018 complaint was filed more than three years after November 2014.  Accordingly, the claim would be time-barred.

The undersigned now turns to the allegation that the Police Department provided false information for the news story that aired July 8, 2015.  Anderson did not tie his "assisting with false media reports" claim to any federal law, and again, the undersigned is unaware of any federal law relating to providing false information to the media about a citizen not related to any criminal proceeding.  Perhaps Anderson is attempting to bring something of a defamation claim.  Such a claim would come under state law, rather than federal law.   "[N]o constitutional doctrine [exists] converting every defamation by a public official into a deprivation of liberty within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment."  *Paul v. Davis*, 424 U.S. 693, 702 (1976); *Hernandez v. Johnson*, 833 F.2d 1316, 1319 (9th Cir. 1987) (holding that libel and slander claims are precluded by *Paul*).  That is, "[a]n alleged act of defamation of character or injury to reputation is not cognizable in a complaint filed under § 1983."  *Padgett v. Mosley*, 2007 WL 2409464, at *7 (M.D. Ala. Aug. 20, 2007).  "Defamation, by itself, is a tort actionable under the laws of most States, but not a constitutional deprivation."  *Siegert v. Gilley*, 500 U.S. 226, 233 (1991).

Consequently, the Michigan statute of limitations applicable to defamation claims governs here. "[T]he limitations period for a defamation action is one year, MCL 600.5805(9), and [a] defamation claim accrues when 'the wrong upon which the claim is based was done regardless of the time when damage results.'" *Williams v. Leduff*, No. 307706, 2013 WL 1286066, at \*6 (Mich. Ct. App. Mar. 28, 2013) (internal quotation marks and citations omitted). The wrong claimed here is the Police Department's providing false information for a news story that aired July 8, 2015. Whether the wrong occurred when the police gave the information or when the story was broadcast, the claim is time barred. Anderson did not bring his complaint until April 2018, more than one year after the claimed wrong occurred.

> b. Count Two – Violation of § 1982 Property Rights

Though Anderson cited § 1982 in the title of Count Two, he also cites § 1981 in the numbered paragraphs following. He asserts that he had the right to make and enforce contracts. He says many of his truck leases were made worthless "by the actions of" the defendants since the defendants portrayed him in a false light. (ECF No. 1, pageID.24, ¶ 10, 11). Specifically, Anderson says the defendants "published information that paints the Plaintiff in a false or misleading light when they offered a 'news story' stating the Plaintiff cashed checks in a criminal fashion," after the criminal case was dropped. (*Id.* at ¶ 13).

The undersigned is not convinced that Anderson has properly brought a claim under § 1981 and 1982,[3] but construing the complaint liberally in light of his *pro se* status, a claim under these sections would have a three-year statute of limitations period, as discussed above.  Count Two is exclusively about the news story, which aired July 8, 2015.  And, again, the claim accrued when Anderson knew or had reason to know of the injury which forms the basis of the claim.  Whether Anderson knew of the injury on July 8, 2015 or sometime thereafter, the claim is timely.  He filed his complaint in April 2018, within three years of the publication of the news story.  Thus, the claim is not time barred.

To the extent Count Two is a state law defamation claim, as discussed above, the claim is time barred.

        c.        Count Three – Violation of Equal Protection and § 1981

Count Three is a claim that Anderson had a right to be free from discrimination in law enforcement and that he was entitled to equal protection of the law.  (ECF No. 1, PageID.27-28).  He cites and quotes § 1983, but does not cite § 1981 except for the title of Count Three.  It is not clear what facts form the basis

---

[3] Sections 1981 and 1982 "prohibit all racial discrimination, whether or not under color of law, with respect to the rights enumerated therein."  *Gen. Bldg. Contractors Ass'n, Inc. v. Pennsylvania*, 458 U.S. 375, 387 (1982) (quoting *Jones v. Alfred H. Mayer Co.*, 392 U.S. 409, 436 (1968).  "A § 1982 claim, like a claim under § 1981, requires that a plaintiff plead racial animus." *Moniz v. Cox*, 512 F. App'x 495, 501 (6th Cir. 2013); *Holland v. O'Hair*, 145 F.3d 1331 (Table), 1998 WL 152753, at *2 (6th Cir. 1998).  Anderson is not alleging racial discrimination here.

of this claim.  It appears, though, that Count Three is about malicious prosecution

or the Police Department's inadequate response to threats or failure to protect

Anderson.  (*Id.* at ¶ 4).  A malicious prosecution claim would be analyzed under

the Fourth Amendment, and thus subject to the three-year statute of limitations for

§ 1983 claims, as discussed above.  And though there appears to be no federal

inadequate response to threats claim, if there were, it also would be subject to a

three-year limitations period.  As discussed above, these claims are time barred.

> d.     Count Five[4] - § 1983 Retaliation, Violation of the First
>         Amendment

Anderson alleges that all the defendants "participated in this use of force by

means of retaliation for the Plaintiff [sic] protected speech and none of the

Defendant [sic] or officers took reasonable steps to protect Plaintiff from this

retaliation for the protected speech."  (ECF No. 1, PageID.30, ¶ 7).  The individual

defendants and Chase Bank have been dismissed from this action.  Thus, as against

the Police Department, it appears that this claim is Anderson's inadequate response

or failure to protect claim.  As discussed above, these claims accrued more than

three years before he filed the complaint in this matter.  The last alleged instance in

which the Police Department ignored a call from Anderson about a threat to his

---

[4] There is no Count Four.

safety was in November 2014.  He filed his complaint in April 2018, more than

three years later.  Thus, the claim is time barred.

> e.    Count Six – Malicious Prosecution Violation of the
>        Fourth and Fourteenth Amendments

In Count Six, Anderson alleges that he had the clearly established right to be

free from malicious prosecution under the Fourth and Fourteenth Amendments.

He says that the defendants conspired to institute, procure, and continue a

proceeding against him after all legal activities were adjuvated.  (ECF No. 1,

PageID.32, ¶ 5-6).  He continues that, "[b]ased on reasonable inference made from

lack of appropriate response to reasonable complaints made by Plaintiff to Clinton

twp. Police, and other egregious behavior that showed bias against plaintiff as

stated in this filing, the attempt to pursue prosecution that had no chance to be

successful against the Plaintiff was malicious."  (*Id.* at ¶ 6).

As discussed above, the malicious prosecution claim is time barred.

> f.    Count Seven – 18 U.S.C. § 241 Conspiracy

In this Count, Anderson alleges that after the criminal case in Clinton

Township was dropped, the defendants "acted by other means" to injure him.

(ECF No. 1, PageID.33).  He further alleges that the defendants "and their co-

conspirator[s] engaged in at least one act in furtherance of the violation of" his

rights.  (*Id.* at ¶ 8).

16

The undersigned is not convinced that Anderson has properly brought this claim.  "18 U.S.C. § 241 does not expressly grant a private right of action," as it is a criminal statute.  *Flood v. Reed*, 2017 WL 1021364, at *4 (S.D. Ohio Mar. 16, 2017) (collecting cases).  To the extent Anderson has properly brought a conspiracy claim, as it is related to malicious prosecution and inadequate police response, the claim is untimely as the primary claims are untimely.  A conspiracy to commit those wrongs, if any, would have occurred prior to the Police Department's alleged actions, and thus is time-barred.  To the extent the conspiracy claim relates to the news story and the underlying claim is not time barred, then the conspiracy claim is not time barred.  *See Berryman v. Freed*, 2017 WL 733150, at *3 (E.D. Mich. Jan. 19, 2017) (citing *Krum v. Sheppard*, 255 F. Supp. 994, 998 (W.D. Mich. 1966)) (holding that § 1985 conspiracy claims are subject to the three-year statute of limitations for personal injury claims in Michigan, explaining that "the damages resulting from a deprivation of civil rights are injuries to the person," and that "[t]herefore, the claim of a conspiracy to deprive the plaintiff of his civil rights is also a claim of 'injuries to the person' within the ordinary meaning of that term.").

       g.    Count Eight – Intentional Infliction of Emotional Distress

Anderson's intentional infliction of emotional distress (IIED) claim is time barred.  This claim is a state law claim only.  To the extent Anderson brings the

IIED claim under § 1983, the claim fails as a matter of law.  In *Voyticky v. Vill. of Timberlake*, 412 F.3d 669, 678 (6th Cir. 2005), the Sixth Circuit held "intentional infliction of emotional distress, by itself, cannot amount to a constitutional violation."  To the extent the IIED claim is about the Police Department's failure to adequally respond to threats, Michigan's three-year IIED statute of limitations applies.  M.C.L. § 600.5805; *Anderson v. Mendoza*, 2013 WL 1875954, at *2 (E.D. Mich. May 3, 2013).  The last alleged inadequate response was in November 2014, more than three years before Anderson filed the complaint, and thus barred.

To the extent the IIED claim is about the news story, a different limitations period applies since the claim is essentially one of damage to his reputation because of the news story.  Courts treat an IIED claim that essentially alleges damage to reputation as similar to a defamation or invasion of privacy claim, and thus apply the one-year statute of limitations discussed above.  *See Nichols*, 344 F. Supp. 2d at 949 (Concluding that "Michigan courts would follow a similar logic and apply the one-year limitations period to Plaintiff's claims for invasion of privacy and intentional and negligent infliction of emotional distress because the injury alleged is one to Plaintiff's reputation.") (collecting cases).  Again, the news story ran July 8, 2015.  The April 2018 complaint was filed more than one year later, and thus the claim is time-barred.

Within Count Eight, Anderson cites 18 U.S.C. § 1962(c).  This statutory provision addresses prohibited activities under the Racketeer Influenced and Corrupt Organizations Act.  But, Anderson never discusses RICO in his complaint except for this single citation, and it does not appear that he meant to bring a RICO claim.  Moreover, Anderson cited only the criminal RICO statute, when individual citizens do not have standing to bring a criminal charge against a defendant. *Diamond v. Charles*, 476 U.S. 54, 64 (1986) (holding that a private citizen "lacks a judicially cognizable interest in the prosecution or nonprosecution of another"); *Saro v. Brown*, 11 Fed. Appx. 387 (6th Cir. 2001) ("A private citizen has no authority to initiate a federal criminal prosecution; that power is vested exclusively in the executive branch.").

> h.     Count Nine - § 1983 Deprivation of Federal Rights

In Count Nine, Anderson alleges that the supervisors at the Police Department are liable for their subordinates' actions under a theory of *respondeat superior*.  (ECF No. 1, PageID.35-36).  This is not a cause of action, but rather an assertion of a theory of liability.  The Police Department's liability is addressed below.  To the extent Count Nine is similar to Count One, in that it is meant to be a "catch-all" § 1983 count, the analysis in the section on Count One applies here.

> i.     Count Ten - § 1981 First Amendment Free Expression
>          and Tort of False Light

Here, Anderson alleges that defendant Wolcheck, with the assistance of the Police Department, published a false and misleading news story and portrayed him in a false light.  (ECF No. 1, PageID.36-37, ¶ 4).  This claim is essentially a defamation claim.  As discussed above, there is no federal defamation cause of action.  Accordingly, this claim is analyzed under Michigan law.  In Michigan, a false light claim is called false light invasion of privacy.  To plead a false light invasion of privacy claim, "a plaintiff must show that the defendant broadcast to the public in general, or to a large number of people, information that was unreasonable and highly objectionable by attributing to the plaintiff characteristics, conduct, or beliefs that were false and placed the plaintiff in a false position." *Duran v. Detroit News, Inc.*, 200 Mich. App. 622, 504 N.W.2d 715, 720–21 (1993) (citation omitted).  This is essentially what Anderson is claiming.  Thus, although Anderson writes only of "false light," this claim is more properly one of false light invasion of privacy.

There is no specific statute of limitations for invasion of privacy.  The District Court in *Nichols v. Moore*, 334 F. Supp. 2d 944 (E.D. Mich. 2004), analyzed whether Michigan's one-year statute of limitations for libel or slander claims would apply to an invasion of privacy claim.  The court concluded, after reviewing Michigan case law and cases from other jurisdictions, that Michigan courts would likely apply the one-year limitations period to an invasion of privacy

claim, as in a defamation claim.  *Id.* at 948-49; *see also Bichler v. Union Bank & Trust Co. of Grand Rapids*, 745 F.2d 1006, (6th Cir. 1984) (Holding that claims of invasion of privacy and defamation, under Michigan law, are treated similarly in terms of the defenses available. The court stated: "[u]nder any circumstances that would give rise to a conditional privilege for the publication of defamation there is likewise a conditional privilege for the invasion of privacy.") (quoting *Restatement (Second) of Torts,* § 652G, comment a); *Williams v. Leduff*, No. 307706, 2013 WL 1286066, at *6 (Mich. Ct. App. Mar. 28, 2013) ("[T]he limitations period for a defamation action is one year, MCL 600.5805(9), and [a] defamation claim accrues when 'the wrong upon which the claim is based was done regardless of the time when damage results.'") (internal quotation marks and citations omitted).

Accordingly, Anderson's defamation and false light invasion of privacy claims are subject to the one-year statute of limitations.  The news story—the factual basis for these claims—aired on July 8, 2015.  Again, "the limitations period for a defamation action is one year, MCL 600.5805(9), and [a] defamation claim accrues when 'the wrong upon which the claim is based was done regardless of the time when damage results.'"  *Williams*, 2013 WL 1286066, at *6.  The claim accrued on July 8, 2015.  To be timely, Anderson's complaint needed to be filed on

or before July 8, 2016.  But, he filed his complaint in April 2018, well-beyond the limitations period.  Thus, the claims are time-barred.[5]

### 2.   *Monell* Liability

To the extent any claims in the complaint are not time barred and still remain, it is of no moment because Anderson has not established *Monell* liability against the Police Department.  Citing Michigan law, the Police Department argues that it cannot be liable for the alleged deprivation of rights on a theory of *repsondeat superior* under § 1983, and that Anderson has not provided any evidence that the Police Department had an official policy or custom encouraging its officers act with animus towards Anderson.  (ECF No. 50, PageID.586). Though not fully articulated, and relying on non-binding state law, the Police Department is essentially arguing that Anderson has not sufficiently proved *Monell* liability for his claims regarding the allegedly false information the department gave for the news story.  The Police Department's *Monell* argument has merit.

Anderson cannot sue a local government entity[6] under 42 U.S.C. § 1983 solely for the actions of its employees on the theory of *respondeat superior*.

---

[5] The final Count, Count Eleven, is against defendant Chase Bank only.  (ECF No. 1, PageID.38).

[6] Though the Police Department did not raise the issue, it is not a proper party to this case.  *See Boykin v. Van Buren Twp.,* 479 F.3d 444, 450 (6th Cir. 2007) ("Van Buren Township Police Department is subsumed within Van Buren Township as a municipal entity to be sued under § 1983, and thus the Police Department was improperly included as a separate defendant in Boykin's suit."); *Laise v. City of Utica*, 970 F. Supp. 605, 608 (E.D. Mich. 1997) (noting that a city police department is merely an agency of the city, and therefore is not a proper defendant in

*Monell v. New York City Dep't of Soc. Servs*., 436 U.S. 658, 692- 94 (1978).  "A

plaintiff who sues a municipality for a constitutional violation under § 1983 must

prove that the municipality's policy or custom caused the alleged injury."  *Ellis v.*

*Cleveland Mun. Sch. Dist*., 455 F.3d 690, 700 (6th Cir. 2006) (citing *Monell*, 436

U.S. at 690-91).  In *Monell*, the Supreme Court held that municipalities are

"persons" subject to suit under § 1983.  436 U.S. at 700-01.  However, it is only

when "execution of a government's policy or custom, whether made by its

lawmakers or by those whose edicts or acts may fairly be said to represent official

policy, inflicts the injury that the government as an entity is responsible under §

1983."  *Id*. at 694.  To establish municipal liability under *Monell v. Department of*

*Social Services*, a plaintiff has four ways to show that a municipality had a "policy

or custom" that caused the violation of his rights. The plaintiff can prove: "(1) the

existence of an illegal official policy or legislative enactment; (2) that an official

with final decision making authority ratified illegal actions; (3) the existence of a

policy of inadequate training or supervision; or (4) the existence of a custom of

tolerance or acquiescence of federal rights violations."  *Burgess v. Fischer*, 735

F.3d 462, 478 (6th Cir. 2013).

---

a § 1983 lawsuit).  However, if Anderson had named Clinton Township instead of the Police
Department in this suit, the analysis would not change.

The undersigned agrees with the Police Department that Anderson has not made out a *Monell* claim against the department.  The Police Department provided the affidavit of its Chief of Police, Fred Posavetz, who was Chief during the time relevant to the complaint.  Chief Posavetz averred that from 2012 through 2019 (or at least until the date of the affidavit, March 8, 2019), the Clinton Township Police Department did not have any plan, policy or custom to violate Anderson's constitutional rights or mistreat or show animus towards him.  (ECF No. 50-8, PageID.685-88).  Chief Posavetz specifically averred that the Police Department did not have a plan, policy, or custom which was designed to defame, slander, or intimidate Anderson, (*Id.* at ¶ 13), or to maliciously prosecute him or ignore or fail to protect him (*Id*. at ¶ 9-10).

Though Anderson alleges (in conclusory fashion) that the Police Department encouraged its officers to use animus as a motivating factor in decisions and actions toward him (ECF No. 1, PageID.21, ¶¶ 12-15), and had a policy or custom which caused the alleged injuries (ECF No. 1, PageID.36), he has not provided evidence to rebut the Police Department's evidence, or otherwise to create a question of material fact on this issue.  More specifically, Anderson has not provided any proof of (1) the existence of an illegal official policy under which the department proceeded, or (2) that an official with final decision-making authority ratified illegal actions, or (3) the existence of a custom of acquiescence of federal

rights violations like that alleged here—publication of a false news story. And, finally, Anderson makes no allegation or attempt to prove that the Police Department failed to adequately train or supervise its officers.[7] Rather, Anderson's response brief is devoted to the issue of whether a defendant is acting under color of state law.[8] (ECF No. 51, PageID.729). The Police Department does not contest that any actions it took were under color of state law. Consequently, the Court is faced with a conclusory complaint allegation that the Police Department had a policy or custom that lead to the alleged injuries against sworn affidavit statement that there is no such policy or custom. Because Anderson has failed to introduce any evidence to create a question of material fact on the *Monell* claim, the Police Department is entitled to summary judgment on the federal claims regarding publication of the news story.

---

[7] Even if Anderson had alleged a failure to train claim, the claims fails. To succeed he must prove the following: (1) the training was inadequate for the tasks performed; (2) the inadequacy was the result of the municipality's deliberate indifference; and (3) the inadequacy was closely related to or actually caused the injury. *Ellis ex rel. Pendergrass v. Cleveland Mun. Sch. Dist.*, 455 F.3d 690, 700 (6th Cir. 2006). "To establish deliberate indifference, the plaintiff 'must show prior instances of unconstitutional conduct demonstrating that the [City] has ignored a history of abuse and was clearly on notice that the training in this particular area was deficient and likely to cause injury." *Brown v. Battle Creek Police Dep't*, 844 F.3d 556, 573(6th Cir. 2016) (quoting *Fisher v. Harden*, 398 F.3d 837, 849 (6th Cir. 2005)). However, Anderson has not come forward with any evidence of the training the officers received, or evidence showing that the Police Department has ignored a history of abuse, or that any inadequacy was closely related to or actually caused injury from publication of the news story.

[8] Notably, Anderson has not asked this Court to defer judgment on the motion for summary judgment until after a period of discovery. Thus, it would seem that Anderson responded to the motion for summary judgment with all the evidence he felt was necessary.

### 3.   State Law Claims

To the extent any state law claims remain, in light of the recommendation to grant summary judgment on all federal claims, the undersigned suggests declining to exercise supplemental jurisdiction on this state law claim.  Under 28 U.S.C. § 1367, a district judge may decline to exercise supplemental jurisdiction over state-law claims if "the district court has dismissed all claims over which it has original jurisdiction. . . ."  28 U.S.C. § 1367(c)(3). "When all federal claims are dismissed before trial, the balance of considerations usually will point to dismissing the state law claims [.]" *Musson Theatrical, Inc. v. Express Corp.,* 89 F.3d 1244, 1254–55 (6th Cir. 1996); *see also Wee Care Child Ctr., Inc. v. Lumpkin,* 680 F.3d 841, 849 (6th Cir. 2010) ("As [plaintiff's] one federal claim was properly dismissed, it was likewise proper for the district court to decline to exercise supplemental jurisdiction over the remaining state law claims."); *Ketola v. Clearwater*, 2008 U.S. Dist. LEXIS 104205, at *13-14, 2008 WL 4820499 (W.D. Mich. Oct. 31, 2008) ("Where a district court has exercised jurisdiction over a state-law claim solely by virtue of supplemental jurisdiction and the federal claims are dismissed prior to trial, the state-law claims should be dismissed without reaching their merits.").

## IV.   RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** that defendant Clinton Township Police Department's motion for summary judgment (Dkt. 50) be **GRANTED**.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc.  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d).  The response must specifically address each issue raised in the objections, in the

same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc.  If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date:  January 3, 2020             s/Michael J. Hluchaniuk
                                   Michael J. Hluchaniuk
                                   United States Magistrate Judge


## CERTIFICATE OF SERVICE

I certify that on January 3, 2020, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send electronic notification to all counsel and/or parties of record.

s/Durene Worth
Case Manager
(810) 341-7881
durene_worth@mied.uscourts.gov